Conrad KEADO, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

Conrad L. KEADO and Linda W.
Keado, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

Nos. 86–1312, 87–1725 and 87–4752.

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1988.

Ronald M. Mankoff, G. Tomas Rhodus, Ronald A. Stein, Brice & Mankoff, Dallas, Tex., for Conrad L. Keado and Linda W. Keado.

Martha B. Brissette, Tax Div., U.S. Dept. of Justice, Washington, D.C., Marvin Collins, U.S. Atty., Dallas, Tex., David English Carmack, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Martha B. Brissette, David English Carmack, Tax Div., U.S. Dept. of Justice, Washington, D.C., for C.I.R.

Before GOLDBERG, GARWOOD and JOLLY, Circuit Judges.

GOLDBERG, Circuit Judge:

The plaintiffs appeal from a federal district court decision denying their request for an injunction barring collection of deficiencies asserted by the Internal Revenue Service. They also appeal from a Tax Court decision dismissing their petition on the ground that it was not timely filed. Finding both decisions correct, we affirm.

## I. BACKGROUND

The Internal Revenue Service ("IRS") audited the 1980 and 1981 tax returns filed by Conrad L. Keado and his wife, Linda W. Keado (the "Taxpayers"), and determined deficiencies[1] in their reported tax liabilities.

The Internal Revenue Code (the "Code")[2] generally requires the IRS to mail a notice of deficiency to a taxpayer's last known address at least ninety days before assessing[3] a tax deficiency. The IRS contends that it sent the Taxpayers a notice of their 1980 and 1981 deficiencies by certified mail on August 10, 1984. For summary judgment purposes, the Government concedes that the Post Office never delivered the August 10, 1984 notice of deficiency to the Taxpayers.

On December 31, 1984, the IRS assessed the 1980 and 1981 deficiencies of $50,069.38 and $22,919.97 respectively.[4] Several days later, the Taxpayers received notice of these assessments. Over the next nine months, the Taxpayers repeatedly wrote to various offices of the IRS complaining that the IRS had not mailed a notice of deficiency before making these assessments.[5]

1. I.R.C. § 6211(a) defines a deficiency as (1) the excess of the statutorily imposed tax over the total of the amount shown on the taxpayer's return, (2) plus previous assessments, (3) less abatements, credits, refunds or other repayments.

2. Statutory references are to the Internal Revenue Code of 1954, codified at 26 U.S.C.

3. See I.R.C. § 6203; Laing v. United States, 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976) ("The 'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls.").

4. These deficiencies included additions to tax for negligence. See I.R.C. § 6653(a). The total assessments, including interest through December 31, 1984, were $80,266.95 and $37,958.00, respectively.

5. On January 11, 1985, the Taxpayers' counsel wrote to the Internal Revenue Service Center in Austin, Texas complaining that the assessment had not been preceded by a notice of deficiency. The Taxpayers' counsel wrote:

I am appalled that additional assessments of taxes, penalties and interest were made by your office on December 31, 1984, when no statutory Notice of Deficiency was previously issued with respect to these taxes, etc., as required by § 6213 of the Internal Revenue Code of 1954, as amended, and no waiver of this requirement has been given by the taxpayers or their representatives.

Over two months later, on March 22, 1985, the Taxpayers' counsel wrote to a Branch Chief in the Dallas Collection Division regarding the Tax-

The IRS planned to file notice of the tax liens resulting from the 1980 and 1981 assessments on October 4, 1985.[6] On that day, however, the Taxpayers filed suit in federal district court seeking an injunction barring collection of the 1980 and 1981 deficiencies. The Taxpayers contended that the IRS could not properly file notice of the tax liens or otherwise try to collect the taxes because it had not mailed a notice of deficiency before making the December 31, 1984 assessment.

On October 5, 1985, the day after the Taxpayers filed their suit, the parties attended a conference with a district court judge. At this conference the Government agreed to forbear further collection activity until an investigation of the facts was completed.

Both parties moved for summary judgment. On March 12, 1986, the district court issued its memorandum opinion and order. The district court noted that the Taxpayers' request for an injunction barring collection of the 1980 deficiency was moot because the government had subsequently issued a second deficiency notice for 1980.[7] The district court then concluded that the summary judgment evidence was sufficient to establish as a matter of law that the IRS mailed the August 10, 1984 deficiency notice. As a result the district court refused to issue the injunction sought by the Taxpayers and dismissed the case.

## II. 1981 DEFICIENCY

With regard to the 1981 deficiency, the sole issue on appeal is whether the district court erred in concluding that the IRS mailed the August 10, 1984 deficiency notice. The district court properly granted summary judgment if the Government showed that there was "no genuine issue as to any material fact" and that it was "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the district court's decision we apply the same general standard. *Gatx Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 714 (5th Cir.1985); *McCrae v. Hankins*, 720 F.2d 863, 865 (5th Cir.1983). We view the record and inferences from the facts in the light most favorable to the Taxpayers, the nonmoving party. *Gatx Aircraft*, 768 F.2d at 714.

### A. Statutory Requirements for Assessment

The Code sets forth specific procedures that the IRS must follow to assess and collect an income tax deficiency.

First, before beginning collection activity, the IRS must notify a taxpayer of the deficiency by mailing him a notice of deficiency by certified or registered mail. The Code provides that the notice "shall be sufficient" if it is sent to the taxpayer at his "last known address."[8] The Code does

---

payers' 1983 account. This letter said that counsel "was advised that additional assessments had been made in December for 1980 and 1981," and requested that the Branch Chief contact counsel immediately "if for any reason it is determined that further collection action is to be taken with respect to 1980, 1981 or 1983."

Over four months later, on August 31, 1985, the Taxpayers' counsel met with a Revenue Officer. At this meeting, the Taxpayers' counsel requested and received a copy of the August 10, 1984 notice of deficiency.

On September 27, 1985, the Taxpayers' counsel wrote to the Dallas District Director requesting abatement of the 1980 and 1981 assessments "for reason that no notice of deficiency was mailed to the taxpayers." This letter also requested deferment of tax lien filings scheduled for October 4, 1985, pending consideration of the requested abatement.

**6.** Tax liens on all of the Taxpayers' property automatically arose upon issuance of the assessments. I.R.C. §§ 6321, 6322; *see United States v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965).

**7.** All parties agreed that the statute of limitations barred issuance of a second notice of deficiency for 1981. Generally, the IRS must assess any deficiency within three years after a taxpayer files his return. I.R.C. § 6501(a). The Taxpayers filed their 1981 return on June 15, 1982. As a result, the general three year statute of limitations for 1981 expired on June 15, 1985, approximately three and one-half months before the Taxpayers filed their suit for injunction.

**8.** I.R.C. § 6212(a) provides:
If the Secretary determines that there is a deficiency in respect of any [income] tax ... he is authorized to send notice of such defi-

not require that the taxpayer *receive* the notice of deficiency.[9]

Second, after mailing the notice of deficiency, the IRS must wait at least ninety days. During this ninety day waiting period the taxpayer may file a petition with the United States Tax Court. I.R.C. § 6213(a). If the taxpayer fails to file a Tax Court petition during this ninety day period, the Tax Court lacks jurisdiction to consider the deficiency.[10]

Third, if the taxpayer has not filed a Tax Court Petition, after waiting at least ninety days, the IRS may assess the deficiency.

Section 6213(a) specifically prohibits any assessment or collection attempts until ninety days after the mailing of the statutory notice of deficiency and during the time that a Tax Court case is pending. To enforce its prohibition, § 6213(a) provides that any assessment during the prohibited times "may be enjoined by a proceeding in the proper court." Section 6213(a) is thus an exception to the general bar on suits to restrain assessment or collection of taxes.

*See* I.R.C. § 7421. If the IRS did not mail the August 10, 1984 deficiency notice as required by the Code, § 6213(a) might permit a court to enjoin any attempts to collect the December 31, 1984 assessment.

### B. Proof of Mailing

██ The relevant statutes simply require that the IRS mail a deficiency notice by certified or registered mail to a taxpayer's last known address. I.R.C. § 6212(a); *see supra* note 8 and accompanying text. The IRS has, however, established detailed procedures for mailing deficiency notices. The Internal Revenue Manual provides:

(3) The record of certified mailing of notices of deficiency should be kept on P.S. Forms 3877 which are supplied in booklet form by the U.S. Postal Service. These books together with a series of certified numbers may be obtained from the local postmaster.... The following heading will be typed or imprinted by rubber stamp across the first line of each page of P.S. Form 3877:

---

ciency to the taxpayer by certified mail or registered mail.
... [N]otice of a deficiency, if mailed to the taxpayer at his last known address, shall be sufficient....

**9.** *Tadros v. Commissioner,* 763 F.2d 89, 91 (2d Cir.1985); *Wallin v. Commissioner,* 744 F.2d 674, 676 (9th Cir.1984); *United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 312 (9th Cir.1982) (purpose of statute is to give taxpayer actual notice but notice of deficiency is sufficient if mailed to taxpayer's "last known address"); *Berger v. Commissioner,* 404 F.2d 668, 673 (3d Cir.1968), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1744, 23 L.Ed.2d 218 (1969); *Delman v. Commissioner,* 384 F.2d 929, 932 (3d Cir.1967), *cert. denied,* 390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1144 (1968) (also discussing legislative history supporting this interpretation of the statute); *Brown v. Lethert,* 360 F.2d 560, 562 (8th Cir.1966).

The Taxpayers argue, in essence, that receipt is required. They find support for their argument in language from a Tax Court opinion and a Seventh Circuit opinion. *See McPartlin v. Commissioner,* 653 F.2d 1185, 1188 (7th Cir. 1981) ("When evidence indicates that a notice of deficiency has not been received by the taxpayer due to the error of the Postal Service, the notice shall be found insufficient"); *Estate of McKaig v. Commissioner,* 51 T.C. 331, 336 (1968) ("The

statute says the notice of deficiency must be mailed to the last known address. We do not think this mailing can be said to have been completed within the meaning of the statute because the Post Office Department diverted it. Petitioner cannot be held responsible for this."). In *McPartlin,* however, the Seventh Circuit found that the IRS did not mail the notice of deficiency to the taxpayers' last known address. This finding was sufficient to support the court's holding. The court's comments regarding the effect of the post office's error were dicta. In *McKaig,* the Tax Court noted doubt about whether the notice of deficiency was mailed to the taxpayer's last known address but did not make any specific holding on that issue. Instead the Tax Court found the taxpayer's petition timely because it was filed within ninety days of their actual receipt of a copy of the notice.

If the Taxpayers had filed a Tax Court petition promptly after they learned of the notice of deficiency, *McKaig* and the dicta in *McPartlin* might provide some support for allowing the Tax Court to hear the merits of their case. The Taxpayers, however, did not do so.

**10.** The Tax Court is the only prepayment forum for litigation of tax cases. If the taxpayer fails to timely file a Tax Court Petition, but still desires to contest the merits of the deficiency, he must pay the deficiency in full and sue for a refund in a United States District Court or the United States Claims Court.

"Notices of deficiency, for the years indicated, have been sent to the following taxpayers."

. . . .

(6) The Service employee will then enter the certified number on the envelope, and list the same number together with the name and address of the addressee on P.S. Form 3877. The year(s) for which the notice is applicable ... will be entered in the remarks column opposite the taxpayer's name and address. The notices to be mailed together with P.S. Form(s) will then be presented to the post office. The postal employee first compares the certified mail numbers, and names and addresses, on the envelope with those on P.S. Form 3877 and counts the number of envelopes. He/she then indicates post office receipt of this mail by signing and inserting the post mark on P.S. Form 3877, and returns the forms to the Service employee. The Service employee should initial and date P.S. Form 3877 as part of the permanent record of mailing, in order that, if called as a witness, he/she could testify as to the exact date on which the letters were presented for mailing.... Under no circumstances will the receipted P.S. Forms 3877 pertaining to the mailing of notices of deficiency be commingled with any other mailing records.

Internal Revenue Manual—Audit § 4462.2.

■ Complete compliance with these established procedures would provide sufficient proof of mailing. *United States v. Zolla*, 724 F.2d 808, 810 (9th Cir.), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984) (Form 3877 is highly probative and is sufficient, in the absence of contrary evidence, to establish that the notice of deficiency was properly sent); *United States v. Ahrens*, 530 F.2d 781, 784–86 (8th Cir.1976); *Cataldo v. Commissioner*, 60 T.C. 522, 524 (1973), *aff'd*, 499 F.2d 550 (2d Cir.1974) (per curiam).

The IRS submitted three pieces of summary judgment evidence to prove that it mailed the August 10, 1984 notice of deficiency to the Taxpayers. First, the IRS submitted an affidavit by Mr. Donald A. Gloff of the IRS Quality Review Staff in Dallas. Mr. Gloff began:

I ... am in a position to verify the procedure for mailing of Statutory Notice[s] of Deficiency (90–day letter[s]) and specifically the procedure used to mail the notice to Conrad and Linda Keado from Internal Revenue Service Quality Review Staff....

Mr. Gloff then explained the steps involved in the mailing, including signing the notice, date stamping all copies, completing Post Office Forms 3800 and 3877–A, and taking the Post Office Forms and the envelope containing the deficiency notice to the Post Office for stamping and mailing. Mr. Gloff also noted that "[t]he Firm Mailing Books maintained by QRS Section B, 90–Day section are used *exclusively* for the mailing of 90–day letters."

Second, the IRS submitted a copy of Post Office Form 3800, Receipt for Certified Mail. The bottom of Form 3800 is a numbered sticker for attachment to a certified letter. The top of Form 3800 is a numbered receipt for the person mailing the certified letter. The copy of Form 3800 submitted reflected that a certified letter with the number P 727 358 276 was sent to the Taxpayers at their home address. The Form 3800 submitted was postmarked August 10, 1984.

Third, the IRS submitted a copy of the relevant page from their Post Office Form 3877–A, Firm Mailing Book. This page also reflected that certified letter P 727 358 276 was sent to the Taxpayers at their home address. The Form 3877–A was postmarked August 10, 1984 and was initialled by the receiving Post Office employee who filled in the total number of items received.

Because the Form 3877–A submitted did not have the statement prescribed by Internal Revenue Manual § 4462.2(3), *supra*, regarding the mailing of notices of deficiency and because the IRS employee mailing the notice did not note the years covered in the comments space, the Taxpayers argued that the Government only proved that the IRS mailed them "something" on August 10, 1984. The district court, however, found Mr. Gloff's statement that the forms

in question were used only for the mailing of notices of deficiency sufficient. On appeal, the Taxpayers also point out that the IRS employee mailing the letter did not initial the Form 3877–A as prescribed by Internal Revenue Manual § 4462.2(6), *supra*, and that the file copy of the notice of deficiency was not date stamped, although Mr. Gloff's affidavit said it should be.[11]

■ Procedures or rules adopted by the IRS are not law.[12] The IRS adopted the deficiency notice mailing procedures to insure adequate proof of mailing, if needed. As we noted above, complete compliance with the established procedures would provide sufficient proof of mailing and the IRS certainly should carefully follow these procedures. Its failure to do so in this case has increased the length and complexity of this litigation. Nevertheless, failure to comply precisely with each aspect of each procedure is irrelevant if the evidence adduced is sufficient to prove mailing. The district court determined that the evidence was sufficient to establish as a matter of law that the IRS mailed the Taxpayers a deficiency notice for 1980 and 1981 on August 10, 1984. We agree with that determination.

■ Code § 6213(a) does not authorize a court to grant an injunction against collec-

tion where the IRS mailed a notice of deficiency, as required by §§ 6212 and 6213, before making the disputed assessment. Indeed, where there is no violation of the statutory notice procedure set forth in §§ 6212 and 6213, the Anti-Injunction Act, I.R.C. § 7421(a), expressly precludes injunctive relief. As a result, we affirm the district court's denial of the injunction requested by the Taxpayers to bar collection of the 1981 deficiency assessed on December 31, 1984.[13]

## III. 1980 DEFICIENCY

One might think that the preceding analysis would apply equally to the 1980 deficiency, ending our inquiry. The 1980 deficiency was after all included in the same August 10, 1984 notice of deficiency discussed above. There are, however, additional complications with regard to 1980.

### A. The Second Deficiency Notice

Before the district court issued its summary judgment, a Government memorandum told the court that the IRS had issued a second 1980 notice of deficiency "as that year was still open by agreement." The record indicates that the Government had two reasons for issuing the second 1980

11. The Taxpayers also produced a copy of Internal Revenue Manual–Audit § 4463.4 which provided that the IRS should retain two copies of each notice of deficiency. The Taxpayers asserted that the IRS only had one copy of their notice. The number of copies retained, however, does not seem very significant, particularly since the current version of § 4463.4 only provides that the IRS should retain one copy of each notice of deficiency.

12. *See American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538–39, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970); *see also United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

13. The Government asserts that, even if we had found that it failed to properly mail the August 10, 1984 deficiency notice, we still should not issue any injunction. The Government argues that to obtain an injunction the Taxpayers should also have to satisfy the traditional equitable prerequisites to an injunction. Since we find that the IRS mailed the August 10, 1984 notice of deficiency, we need not and do not

reach this issue. *See Clark v. Campbell*, 501 F.2d 108 (5th Cir.1974), *cert. denied sub nom., United States v. Clark*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976) (affirming injunction barring collection under jeopardy assessment provision without discussing equitable requirements); *Phinney v. Briscoe*, 297 F.2d 591, 592 (5th Cir.1962) (affirming grant of injunction without discussing equitable requirements); *Maxwell v. Campbell*, 205 F.2d 461, 462 (5th Cir.1953) (reversing denial of injunction without discussing equitable requirements). *But see Lovell v. United States*, 795 F.2d 976 (11th Cir. 1986) (requiring showing of irreparable harm and inadequacy of alternative remedies); *Flynn v. United States*, 786 F.2d 586, 590–91 (3d Cir. 1986) (same); *Perlowin v. Sassi*, 711 F.2d 910, 912 (9th Cir.1983); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 313 (9th Cir.1982) (denying injunction, even though IRS failed to mail deficiency notice to taxpayer's last known address, because taxpayer failed to establish that it had no adequate remedy at law or that irreparable injury would result from denial of the injunction); *Philadelphia & Reading Corp. v. Beck*, 676 F.2d 1159, 1163 (7th Cir.1982).

notice of deficiency. First, the Government thought the statute of limitations for 1980 would soon expire [14] and issuance of a new notice protected against an unfavorable district court decision on the first notice. Second, issuance of a new notice restarted the ninety day period for filing a Tax Court petition, giving the Taxpayers an opportunity to litigate the merits in the Tax Court.

The IRS's decision to issue the new 1980 notice of deficiency appears perfectly reasonable and, again, one might think that we approach the end of our inquiry. But further complications remain. Several months after the district court entered its judgment dismissing the Taxpayers' injunction action, the Taxpayers pointed out that the district court's decision established that the statute of limitations for 1980 had actually expired *before* the IRS issued the second deficiency notice.

Generally, the IRS must assess any deficiency within three years after a taxpayer files his return.[15] For 1980, however, the Taxpayers had agreed to an extension of the time for assessment of any deficiency. Form 872–A, the extension agreement executed by the Taxpayers, provided an indefinite extension of the statute of limitations that could be terminated by the Taxpayers, the IRS, or certain events. One of the terminating events provided by Form 872–A was the mailing of a deficiency notice:

> [I]f a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited.[16]

The making of an assessment is generally prohibited until ninety days after the IRS mails a notice of deficiency.[17] Under the terms of Form 872–A, therefore, the agreed extension for 1980 terminated 150 days after the IRS mailed a notice of deficiency. Because the district court found that the IRS mailed the August 10, 1984 notice of deficiency, which included 1980 as well as 1981, the agreed extension of the statute of limitations for the Taxpayers' 1980 tax liability expired 150 days after August 10, 1984—on January 7, 1985. Because the district court found that the IRS mailed the August 10, 1984 notice of deficiency, the second deficiency notice, which the IRS mailed on December 13, 1985, was mailed after the expiration of the statute of limitations and was void.[18]

### B. The First 1980 Deficiency Notice Revisited

After the Taxpayers pointed out the invalidity of the second 1980 notice of defi-

14. On October 2, 1985, the Taxpayers sent the Government a Form 872–T which would have terminated the 1980 statute of limitations on December 31, 1985, if the 1980 statute of limitations had not been terminated earlier by some other event. *See infra* note 16 and accompanying text.

15. I.R.C. § 6501(a). For this purpose, an income tax return filed before the due date is considered filed on the due date. *Id.* § 6501(b)(1).

16. The full termination provision was:
[The Taxpayers] and the District Director of Internal Revenue or Regional Director of Appeals consent and agree as follows:
(1) The amount(s) of any Federal income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1980 may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872–T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited.

17. I.R.C. § 6213(a). Section 6503(a)(1) provides that running of the statute of limitations is suspended during the ninety days following the issuance of a notice of deficiency and while an action is pending in the Tax Court.

18. We note that in *Roszkos v. Commissioner,* 850 F.2d 514 (9th Cir.1988), the court found that an improperly mailed notice of deficiency did not terminate a Form 872–A extension of the statute of limitations. Our case is, however, different because the notice of deficiency was properly mailed.

ciency, the IRS realized that, given their initial victory in the district court, the original August 10, 1984 notice of deficiency might remain viable. The district court subsequently confirmed that the first 1980 notice of deficiency remained viable. The Taxpayers disagree with that decision, but before we discuss it we must decide if the district court had the power to address the issue.

*1. The District Court's Power to Decide the Viability of the First 1980 Deficiency Notice.* Following the district court's initial decision, the parties directly or indirectly raised the issue of the validity of the first deficiency notice in (1) a Tax Court proceeding grounded on the second 1980 deficiency notice, (2) a mandamus action filed in the same federal district where the Taxpayers had filed their original injunction action, (3) motions for relief under Fed.R.Civ.P. 60(b)[19] in the district court that heard the original injunction action, and (4) a motion asking this court to remand the pending appeal of the original injunction action to the district court to allow that court to rule on 1980.

On July 28, 1987, the district court relied on Fed.R.Civ.P. 60(b) as authority to enter its decision that the first 1980 notice of deficiency remained viable. Both parties devoted substantial portions of their briefs in this appeal, and of their oral argument,

to the issue of whether entry of the district court's second decision was an abuse of its discretion under Rule 60(b). We need not decide that issue. On January 13, 1987, over six months before the district court entered its second decision on July 28, 1987, this court granted the Government's motion to remand the original injunction action to the district court to allow it to correct the record and rule as to 1980.[20] Aside from everything else, in truth and in fact, the limited remand order prescribed what the trial court did.

*2. The Trial Court's Decision of the Viability of the First Deficiency Notice.* The trial court merely filled in a missing gap in the record. Today it is smooth, clear and brings us to port.

In its initial opinion, the March 12, 1986 memorandum opinion and order, the district court said:

> Because the Internal Revenue Service has issued a new notice of deficiency for 1980, which remained open by agreement, the parties agree that the issues with respect to that year are moot. Only the assessment for 1981 remains before the court.

The district court did not, however, issue the injunction sought by the Taxpayers for 1980 but instead dismissed their action on the merits.[21] As a result, the district

---

**19.** Fed.R.Civ.P. 60(b) provides:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment....

**20.** The Government requested "a limited remand of the case to the District Court for sup-

plemental proceedings as to the tax year 1980" saying that "the case should be remanded to the District Court for a determination whether the first deficiency notice was valid and effective for 1980 and, if not, whether an injunction as to collection for that year will lie." On January 13, 1987, this court said:

> IT IS ORDERED that appellee's motion for a limited remand as to tax year 1980 is GRANTED. IT IS FURTHER ORDERED that appellee's motion to continue the stay of proceedings in this Court pending the district court's determinations on remand and the perfection of any appeal therefrom is GRANTED. IT IS FURTHER ORDERED that appellants' motion to continue generally the stay of proceedings in this Court is GRANTED to the extent indicated and otherwise DENIED.

**21.** The district court actually entered judgment as follows:

> IT IS ORDERED, ADJUDGED and DECREED by the Court that Plaintiffs Conrad L. Keado and Linda W. Keado take nothing by

court's initial judgment did nothing to impugn the validity of the December 31, 1984 assessment of the 1980 deficiency.

■ Any questions regarding the continued viability of the original notice of deficiency arose from language in the memorandum supporting the Government's February 18, 1986 motion for summary judgment in the original district court action. The memorandum said:

> Due to an "abundance of caution" the United States has issued a new statutory notice of deficiency to the plaintiffs for the year 1980 and abated the [December 31, 1984] assessment making this claim moot. This leaves in issue only the amount of $21,828.54 plus penalties and interest for the tax year 1981 for which the statute of limitations has passed for issuance of a new notice of deficiency.

Later in the same memorandum, the IRS said:

> Through an "abundance of caution" the United States has [issued] a new statutory notice of deficiency for 1980, as that year was still open by agreement. That year is now moot and the discussion is founded on 1981.

If the December 31, 1984 assessment for 1980 had actually been abated, we presume that nothing could resurrect it. But the abatement never occurred, apparently because a group of abatement requests, including this one, was somehow misrouted.

In its second opinion the district court said that its original ruling that the issues pertaining to the first 1980 notice of deficiency were moot "was premised on the parties' representations that the new assessment for 1980 would not be time-barred and that the old assessment had been abated. The Court is satisfied that this case involves both mistake and inadvertence and other reasons justifying relief

from the Court's determination of mootness."

There appear to be three theories which might have required that the district court order abatement of the first 1980 assessment: (1) fraud; (2) an enforceable agreement between the parties requiring abatement; and (3) equitable estoppel.

The district court rejected the Taxpayers' fraud allegations and our reading of the record convinces us that no fraud occurred. Although the Government did say that the December 31, 1984 assessment had been abated nothing in the record indicates that this misrepresentation was intentional. Instead, the record establishes that mistake caused the nonabatement.[22]

There is no evidence in the record of any agreement at all between the parties and there is certainly no evidence of an enforceable agreement requiring abatement. In addition, the Taxpayers have specifically said that the Justice Department acted unilaterally.[23]

In *Moody v. United States*, 783 F.2d 1244 (5th Cir.1986), we discussed equitable estoppel against the United States:

> Traditionally, equitable estoppel did not lie against the government. *See generally*, Comment, *Equitable Estoppel of the Government*, 79 Colum.L.Rev. 551 (1979). In more recent times, the courts have applied the doctrine to the federal government in certain narrow circumstances. *See Azar v. United States Postal Service*, 777 F.2d 1265 (7th Cir. 1985); *Portmann v. United States*, 674 F.2d 1155 (7th Cir.1982); *TRW, Inc. v. F.T.C.*, 647 F.2d 942 (9th Cir.1981). One who seeks to invoke equitable estoppel against the United States must, at a minimum, establish the four traditional private law elements of the doctrine: (1) that the party to be estopped was aware

their suit, and that this suit be, and it is hereby, DISMISSED on the merits at Plaintiffs' cost.

**22.** At one point, at least, the Taxpayers withdrew their fraud allegations. *See* Plaintiffs' January 7, 1987 Memorandum in Opposition to Defendant's Cross-Motion for Relief Under Rule 60(b) at 1 n. 1.

**23.** The Plaintiffs' January 7, 1987 Memorandum in Opposition to Defendant's Cross-Motion for Relief Under Rule 60(b) said the Justice Department "acted unilaterally in (1) conceding the controversy over 1980, and (2) declaring that controversy moot." *Id.* at 11–12.

of the facts; (2) that the party to be estopped intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts; and (4) that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury.... [2]

2. Because of our finding that [plaintiff's] reliance was not reasonably based, we do not decide whether "affirmative misconduct" by an employee of the government is required to estop the government. *See Portmann; cf. Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Nor do we decide whether the sovereign function/proprietary function distinction should be adopted. *See Azar; FDIC v. Harrison*, 735 F.2d 408 (11th Cir.1984).

783 F.2d at 1246 (footnote in original). More recently we said that "[a] private individual asserting estoppel against the government has a very heavy burden to bear. *Jones v. Department of Health & Human Services*, 843 F.2d 851, 853 (5th Cir.1988).

Any estoppel claim that the Taxpayers might make must fail because the Taxpayers cannot establish that they reasonably relied on the conduct of the Government to their substantial injury. In the Tax Court, the Taxpayers claimed injury from the Government's misstatement because they incurred expense in filing a Tax Court petition based on the second 1980 deficiency notice. Yet the Taxpayers knew before they filed that Tax Court petition that the second 1980 deficiency notice would be invalid if the Government prevailed on the first notice.[24] Since the Taxpayers knew this they also must have known that the Government had misinterpreted the statute of limitations. Since the Taxpayers must have known of the Government's error, they cannot claim reasonable reliance on the Government's erroneous statements

24. The Taxpayers filed their Tax Court petition on March 10, 1986. Over a month earlier, in a memorandum supporting their January 31, 1986 motion for summary judgment in the original district court action, the Taxpayers noted that they had received a second 1980 deficiency notice and continued:

Plaintiffs' 1981 taxable year is presently closed for assessment under the applicable statute of limitations. I.R.C. § 6501(a). 1980 would be open by reason of a prior agreement

that 1980 remained open by agreement, that the issues regarding the first deficiency notice for 1980 were moot, or that the 1980 assessment had been abated.

■ Even if the Taxpayers could prove the elements of estoppel we could not grant the relief they seek—an injunction forever barring collection of the 1980 tax liability. Estoppel is an equitable form of action and only equitable rights are recognized. *Nimrod Marketing (Overseas), Ltd. v. Texas Energy Investment Corp.*, 769 F.2d 1076, 1080 (5th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). Recovery under an estoppel theory is limited to the amount necessary to compensate for the loss suffered. *Id.* "One recovering under promissory estoppel should not ... experience a windfall." *Id.* An injunction barring the collection of a tax deficiency exceeding $50,000.00 would certainly constitute a windfall.

## C. The 1980 Tax Court Case

As discussed above, if a taxpayer wishes to litigate the merits of his tax deficiency in the Tax Court he must file a Tax Court petition within ninety days after the IRS mails him a notice of deficiency. The Taxpayers filed a Tax Court petition for 1980 on March 10, 1986, fourteen months after the time for filing a Tax Court petition based on the August 10, 1984 notice of deficiency expired.[25] The Taxpayers' petition was filed more than fourteen months after they first had reason to suspect that a notice of deficiency had been mailed and more than seven months after they first received a copy of the August 10, 1984 notice of deficiency. As a result, their case is clearly distinguishable from the prece-

entered into between Plaintiffs and the I.R.S. only if the notice of deficiency here involved were invalid, as Plaintiffs contend.

25. The Taxpayers' Tax Court petition was filed within ninety days after the IRS mailed the second 1980 notice of deficiency on December 13, 1985. As determined above, however, the second 1980 notice of deficiency is void and therefore is irrelevant to the issue of timeliness.

dent they rely on.[26]  The Tax Court found that the Taxpayers' petition was filed out of time and dismissed their case.  We find no reason to reverse the Tax Court's holding.

## IV. CONCLUSION

The Tax Court's order dismissing the Taxpayers' petition because it was filed out of time is AFFIRMED.  The district court's judgment dismissing the Taxpayers' consolidated suits for injunction and mandamus is AFFIRMED.

---

26.  The Taxpayers rely on *McPartlin v. Commissioner,* 653 F.2d 1185, 1188 (7th Cir.1981) and *Estate of McKaig v. Commissioner,* 51 T.C. 331, 336 (1968).  Both cases are distinguishable because IRS error in addressing the deficiency notice caused or contributed to the nondelivery.  In addition, the taxpayers in these cases filed their Tax Court petitions within ninety days of actual notice.  *See supra* note 9.