T.C. Memo. 2001-29


UNITED STATES TAX COURT


JOHN D. SPIVEY AND PAMELA K. SPIVEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19180-99.                    Filed February 8, 2001.


<u>David D. Aughtry</u> and <u>Brett W. Beveridge</u>, for petitioners.

<u>Gwendolyn C. Walker</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  This case is before us on cross-motions to
dismiss for lack of jurisdiction (cross-motions).  On September
11, 2000, the Court held a hearing (hearing) on the parties'
cross-motions.

Petitioners moved to dismiss this case for lack of jurisdic-
tion on the following alternative grounds:  (1) No notice of

deficiency was mailed to petitioners, and (2) any notice of deficiency mailed to petitioners was not mailed to them at their last known address.  Respondent moved to dismiss this case for lack of jurisdiction on the ground that the petition was not timely filed pursuant to section 6213.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

For the six-year period preceding the date of the hearing on the parties' cross-motions, including the date on which the petition was filed, petitioners John D. Spivey (Mr. Spivey) and Pamela K. Spivey (Ms. Spivey) resided at 4425 Northside Drive, Atlanta, Georgia 30327.

Mr. Spivey, who is president of Perimeter Bob Cat, Inc. (Perimeter), and Ms. Spivey filed a joint Form 1040, U.S. Individual Income Tax Return, for taxable year 1997 with the Internal Revenue Service Center in Chamblee, Georgia.  Perimeter timely filed Form 1120, U.S. Corporation Income Tax Return (corporate return), for its taxable year ended January 31, 1997.

At all relevant times, Nancy Runyan (Ms. Runyan), who was a member of respondent's quality measurement staff,[2] was a senior reviewer and a notice-of-deficiency coordinator in respondent's

---

[1]All section references are to the Internal Revenue Code in effect at all relevant periods.

[2]Around the mid-1980's, respondent's quality measurement staff was known as respondent's review staff.

office in Atlanta, Georgia (Atlanta office).  As such, Ms. Runyan's duties included preparing and finalizing notices of deficiency for so-called revenue agent or field cases (field cases) in respondent's Atlanta office.  Pursuant to respondent's procedures that were in effect at all relevant times for such cases, Ms. Runyan's responsibilities included reviewing each such case, preparing a notice of deficiency for issuance to the taxpayer, having that notice proofread by an assistant, and finalizing the notice of deficiency to be issued to the taxpayer by making any necessary corrections or changes to that notice resulting from that proofreading.  (We shall refer to any notice of deficiency that Ms. Runyan prepared and finalized pursuant to the foregoing procedures of respondent as a final notice of deficiency.)

Once Ms. Runyan finalized a notice of deficiency pursuant to the foregoing procedures of respondent, three copies of the final notice of deficiency were made, one of which was to be sent along with the original of the final notice of deficiency to the taxpayer, one of which was to remain in respondent's administrative file pertaining to that taxpayer, and one of which was to be retained by respondent's quality measurement staff.  After the three copies of the final notice of deficiency were made, the original and those three copies of that notice were returned to Ms. Runyan, who then signed the original and one copy of the final notice of deficiency (signed original and signed copy,

respectively) and initialed the remaining two copies thereof (initialed copies). Thereafter, Ms. Runyan sent the signed original and the signed copy, as well as the initialed copies, of the final notice of deficiency to a support staff of clerks known as 90-day notice (or suspense) clerks (90-day notice clerks).

Pursuant to respondent's procedures that were in effect at all relevant times for the issuance of notices of deficiency for field cases in respondent's Atlanta office, one of the 90-day notice clerks stamped on the signed original, the signed copy, and the initialed copies of the final notice of deficiency the date on which the notice was to be mailed by certified mail to the taxpayer and wrote by hand on that original and those various copies the final date on which that taxpayer may file a petition in the Court. Pursuant to those procedures, the 90-day notice clerk also completed and initialed U.S. Postal Service (Postal Service) Form 3877 (PS Form 3877), an official mailing list form of the Postal Service that was prepared and used by a sender for mailing so-called accountable mail items (e.g., items mailed by certified mail or registered mail). In order to complete PS Form 3877 with respect to the mailing by certified mail of a final notice of deficiency, the 90-day notice clerk indicated on that form the name(s) and address(es) of the addressee(s) of such certified mail, the article number(s) of such mail, the nature of the article(s) being mailed (i.e., notice of deficiency), the year to which the article(s) being mailed pertained, the type of

mail (i.e., certified mail), and the postmark and date of receipt by the Postal Service of PS Form 3877 and the article(s) listed on that form. After the 90-day notice clerk completed PS Form 3877, that form and the article(s) listed on that form were brought to an office of the Postal Service where an employee of the Postal Service (1) confirmed by signing PS Form 3877 that the article(s) listed on that form was delivered to that office for mailing on the date listed on that form and (2) stamped on that form the date on which the Postal Service received the article(s) listed on that form (i.e., the postmark for those articles).

The 90-day notice clerk responsible for the issuance to the taxpayer of a final notice of deficiency placed the initialed copies of that final notice in a suspense file for the 90-day period (90-day suspense period) following the date on which that notice was mailed by certified mail to the taxpayer and during which the taxpayer may file a petition in the Court. After the expiration of the 90-day suspense period, the 90-day notice clerk noted the status of the case (e.g., whether the taxpayer had filed a petition in the Court, that is to say, whether the case was a docketed case in the Court) in handwriting on the initialed copies of the final notice of deficiency. One of those initialed copies of the final notice of deficiency containing the handwritten notation regarding the status of the case was then placed in the administrative file pertaining to the taxpayer and the other of those copies was sent to respondent's quality measurement

staff. At all relevant times, respondent retained the two initialed copies of the final notice of deficiency that had been issued to a taxpayer and did not retain any copies thereof that contained the original signature or a copy of the original signature of Ms. Runyan (or another representative of respondent) who signed both the original and the copy of the final notice of deficiency that were sent to the taxpayer by certified mail. (We shall refer to all of the foregoing procedures of respondent relating to the preparation, finalization, and mailing of notices of deficiency that were in effect at all relevant times for field cases in respondent's Atlanta office as respondent's 90-day letter procedures.)

At all relevant times, pursuant to the procedures of the Postal Service that were in effect in its Atlanta offices, if the addressee of certified mail (or another accountable mail item) was not available to sign for such mail when the Postal Service first attempted to deliver it, the Postal Service left a notice, i.e., U.S. Postal Service Form 3849 (PS Form 3849), in the addressee's mailbox, and the certified mail in question was returned to the Post Office. About five days thereafter, the Postal Service again attempted to deliver the certified mail in question to the addressee. If the addressee was not available to sign for that mail, the Postal Service left another PS Form 3849 in the addressee's mailbox, and the certified mail in question was again returned to the Post Office. About ten days after its

initial attempt to deliver the certified mail in question, the Postal Service again attempted to deliver that certified mail to the addressee.  If the addressee was not available to sign for the certified mail in question, the Postal Service left a third and final PS Form 3849 in the addressee's mailbox, and that certified mail was returned to the Post Office.  Thereafter, on or about the 15th day after the initial attempted delivery by the Postal Service of the certified mail in question, the Postal Service sent that mail to its claims and inquiry section.  That section then logged the undelivered certified mail in question into its records as unclaimed and returned that mail to the sender.  (We shall refer to the above-described procedures in the Atlanta offices of the Postal Service in attempting to deliver certified mail as the Postal Service certified-mail procedures.)

Ms. Runyan prepared and finalized a notice of deficiency with respect to petitioners' taxable year 1997 in accordance with respondent's 90-day letter procedures.  In that final notice, respondent determined a deficiency in, and a penalty under section 6662 on, petitioners' Federal income tax (tax) for 1997 of $64,864 and $12,973, respectively.

In accordance with respondent's 90-day letter procedures, after Ms. Runyan finalized the notice of deficiency with respect to petitioners' taxable year 1997, copies of that notice were made, the original and those copies were returned to Ms. Runyan for her signature or initials, and she sent the signed original

and the signed or initialed copies thereof to the support staff of 90-day notice clerks.  In accordance with respondent's 90-day letter procedures, on May 5, 1999, one of the 90-day notice clerks properly prepared and initialed a PS Form 3877 relating to, inter alia, the final notice of deficiency with respect to petitioners' taxable year 1997 (PS Form 3877 in question).  The PS Form 3877 in question showed that on May 5, 1999, respondent mailed by certified mail a final notice of deficiency with respect to petitioners' taxable year 1997 to each petitioner at 4425 Northside Drive, Atlanta, Georgia 30327.  The PS Form 3877 in question also showed that on the same date, respondent mailed by certified mail (1) a final notice of deficiency with respect to Perimeter's taxable year ended January 31, 1997, to Perimeter and (2) a copy of that notice to Paul Frederick Kelly (Mr. Kelly) to whom Perimeter had granted a power of attorney.  The PS Form 3877 in question contained a Postal Service stamp and the signature of a Postal Service employee, which showed that on May 5, 1999, a Postal Service office located in Atlanta, Georgia, received that form and the articles listed thereon.

The 90-day notice clerk who prepared the PS Form 3877 in question placed the initialed copies of the final notice of deficiency with respect to petitioners' taxable year 1997 in a suspense file for the 90-day suspense period.  Respondent did not retain any copies thereof that contained the original signature or a copy of the original signature of Ms. Runyan.  After the

expiration of the 90-day suspense period, the 90-day notice clerk noted the status of the case in handwriting on the initialed copies of the final notice of deficiency with respect to petitioners' taxable year 1997, and one of those initialed copies containing that handwritten notation was sent to respondent's quality measurement staff.

The Postal Service followed the Postal Service certified-mail procedures in attempting to deliver to each petitioner the certified mail addressed to each of them that was listed on the PS Form 3877 in question. On May 27, 1999, after having unsuccessfully attempted to deliver that certified mail to each petitioner, the Postal Service returned that mail to respondent. Petitioners did not receive the final notice of deficiency with respect to their taxable year 1997 that respondent mailed to each of them by certified mail on May 5, 1999.

Respondent's 90-day letter procedures also were followed in preparing, finalizing, and mailing by certified mail on May 5, 1999, to Perimeter a final notice of deficiency with respect to its taxable year ended January 31, 1997.[3] Mr. Spivey, as president of Perimeter, received that final notice, which the PS Form 3877 in question showed was mailed to Perimeter by certified mail on May 5, 1999. Mr. Kelly received a copy of that final notice,

---

[3]In accordance with respondent's 90-day letter procedures, respondent's quality measurement staff retained an initialed copy of that notice, which contained a handwritten notation of the status of the case.

which the PS Form 3877 in question showed was mailed to him by certified mail on May 5, 1999.

Respondent mailed to petitioners, and petitioners received, a notice dated October 4, 1999, relating to petitioners' taxable year 1997 (October 4, 1999 notice). That notice stated in pertinent part:

WE CHANGED YOUR ACCOUNT

THE CHANGE(S) BELOW RESULTED FROM AN EXAMINATION OF YOUR TAX RETURN SHOWN ABOVE [FORM 1040 FOR TAX PERIOD DECEMBER 31, 1997]. PLEASE SEE YOUR COPY OF THE EXAMINATION REPORT FOR A DETAILED EXPLANATION OF THE CHANGES.

\* \* \* \* \* \* \*

STATEMENT OF ACCOUNT

ACCOUNT BALANCE BEFORE EXAMINATION ACTION       NONE
      INCREASE IN TAX BECAUSE OF
         EXAMINATION ACTION              $64,864.00
      CIVIL PENALTY ADDED                 12,972.80
      INTEREST CHARGED                     7,745.98
      DECREASE IN INTEREST PREVIOUSLY ALLOWED   57.03

      AMOUNT YOU NOW OWE                 $85,639.81

PLEASE PAY THE FULL AMOUNT BY OCT. 25, 1999. IF YOU'VE ALREADY PAID YOUR TAX IN FULL OR ARRANGED FOR AN INSTALLMENT AGREEMENT, PLEASE DISREGARD THIS NOTICE.

On November 8, 1999, respondent mailed a notice to petitioners with respect to their taxable year 1997 (November 8, 1999 notice). That notice stated in pertinent part:

We previously wrote to you about your unpaid account, but you haven't contacted us about it. Penalties and interest on the unpaid balance are continuing to increase. Please pay the amount you owe now. * * *

In response to the November 8, 1999 notice, on November 11,

1999, petitioners, through their counsel, filed a Freedom of Information Act (FOIA) request (petitioners' FOIA request). Petitioners' FOIA request sought, inter alia, respondent's administrative file relating to petitioners' taxable year 1997. In various letters sent to petitioners over the period December 14, 1999, through April 27, 2000, respondent requested additional time from petitioners to respond to petitioners' FOIA request. The reason for respondent's request for an extension of time to respond to petitioners' FOIA request was that respondent had been unable to locate petitioners' administrative file with respect to their taxable year 1997. As of the hearing on the parties' cross-motions to dismiss for lack of jurisdiction, respondent still had not located petitioners' administrative file relating to petitioners' taxable year 1997.

On December 13, 1999, respondent mailed a notice to petitioners with respect to their taxable year 1997 (December 13, 1999 notice). That notice stated in pertinent part:

**We intend to levy on certain assets. Please respond NOW.**

  *  *  *  *  *  *  *

Our records indicate that you haven't paid the amount you owe. The law requires that you pay your tax at the time you file your return. This is your notice, as required by Internal Revenue Code Section 6331(d), of our intent to levy (take) any state tax refunds that you may be entitled to if we don't receive your payment in full. In addition, we will begin to search for other assets we may levy. * * * **To prevent collection action, please pay the current balance now.** * * *

In response to the December 13, 1999 notice, petitioners filed a petition with the Court on December 30, 1999, alleging, inter alia, that no notice of deficiency was ever mailed to, or received by, petitioners.

OPINION

Although petitioners argue that respondent has the burden of proving both the existence of a final notice of deficiency with respect to petitioners' taxable year 1997 as well as the date of the certified mailing of that notice to petitioners, our resolution of the parties' cross-motions does not depend on who has the burden of proof.

In support of petitioners' position that their motion to dismiss for lack of jurisdiction should be granted and that respondent's motion to dismiss for lack of jurisdiction should be denied, petitioners rely principally on Pietanza v. Commissioner, 92 T.C. 729 (1989), affd. without published opinion, 935 F.2d 1282 (3d Cir. 1991).  We find Pietanza to be distinguishable from the instant case in certain material respects and petitioners' reliance thereon to be misplaced.  As we stated in that case, Pietanza was a case of first impression, and we limited our holding therein to the unusual facts presented there.  See Pietanza v. Commissioner, supra at 736.  No such unusual facts are presented in the instant case.

One material distinction between Pietanza v. Commissioner, supra, and the instant case is that in Pietanza the Commissioner

of Internal Revenue (Commissioner) did not provide the Court with a copy of the notice of deficiency that the Commissioner claimed had been prepared for the taxable year in question and issued to the taxpayers involved in that case.[4]  Nor did the Commissioner introduce other evidence in Pietanza that established the existence of such a notice of deficiency.  The Commissioner produced only a draft of such a notice, which did not contain the same information that allegedly appeared in the notice of deficiency that the Commissioner claimed was issued to the taxpayers.  See id. at 734.  Moreover, the Commissioner "made no attempt to present evidence indicating that a final notice was typed, dated, and signed."  Pietanza v. Commissioner, supra at 740-741.

In contrast, in the present case, we have found that Ms. Runyan prepared and finalized a notice of deficiency with respect to petitioners' taxable year 1997.  The record contains an initialed copy of that final notice.  We are satisfied on the record before us, including Ms. Runyan's testimony,[5] that that

---

[4]After we issued our opinion in Pietanza v. Commissioner, 92 T.C. 729 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991), respondent located a copy of the notice of deficiency in question and filed motions to reconsider and revise that opinion and to vacate our Order of dismissal in that case. We denied those motions because respondent failed to show that respondent had exercised due diligence in previously attempting to locate the notice of deficiency in question.  See Pietanza v. Commissioner, T.C. Memo. 1990-524.

[5]Although at trial the Court sometimes found Ms. Runyan's testimony to be confusing, Ms. Runyan subsequently clarified her testimony, and we found Ms. Runyan to be credible.  Ms. Runyan
(continued...)

initialed copy, which was retained by respondent's quality measurement staff, is identical in content to the final notice of deficiency with respect to petitioners' taxable year 1997 that Ms. Runyan prepared, except for her initials and the handwritten notation appearing on that initialed copy.[6]  That handwritten notation, which relates to the status of the matter, was placed on that initialed copy by one of respondent's 90-day notice clerks after the expiration of the 90-day suspense period applicable to the final notice of deficiency with respect to petitioners' taxable year 1997.  On the instant record, we find that the existence of a final notice of deficiency with respect to petitioners' taxable year 1997 has been established.

Another material distinction between Pietanza v. Commissioner, supra, and the instant case relates to the presumption of

---

[5](...continued)
testified that she prepared and finalized a notice of deficiency with respect to petitioners' taxable year 1997 in accordance with respondent's 90-day letter procedures and that, except for the handwritten notation and Ms. Runyan's initials (instead of her signature) that appear on the initialed copy of the final notice of deficiency with respect to petitioners' taxable year 1997, that initialed copy is a copy of that final notice.

[6]It is noteworthy that the respective amounts of the deficiency in, and the penalty on, petitioners' tax for their taxable year 1997 that were reflected in the initialed copy of the final notice of deficiency with respect to petitioners' taxable year 1997, which is part of the record in this case, are identical to the respective amounts of the increase in tax and civil penalty that were reflected in the October 4, 1999 notice from respondent to petitioners, which petitioners attached to their motion to restrain collection that they filed in the Court on Apr. 18, 2000, and in which respondent requested payment of those amounts as well as interest thereon.

official regularity that generally applies in the case of a properly prepared PS Form 3877. Pursuant to that presumption, "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States v. Chemical Found., Inc., 272 U.S. 1, 14-15 (1926); see Keado v. United States, 853 F.2d 1209, 1213 (5th Cir. 1988); United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984); United States v. Ahrens, 530 F.2d 781, 784 (8th Cir. 1976); Coleman v. Commissioner, 94 T.C. 82, 91 (1990).

In Pietanza v. Commissioner, supra, we were unwilling to rely on the presumption of official regularity. Critical to our unwillingness to do so in Pietanza was the failure by the Commissioner to establish the existence of the notice of deficiency that the Commissioner claimed had been prepared and issued to the taxpayers involved in that case. See Pietanza v. Commissioner, supra at 739-742. In contrast, we have found on the record presented the existence of a final notice of deficiency with respect to petitioners' taxable year 1997. The instant record also contains a properly completed PS Form 3877. That form shows that on May 5, 1999, respondent mailed to each petitioner by certified mail a final notice of deficiency with respect to petitioners' taxable year 1997 that was addressed to 4425

Northside Drive, Atlanta, Georgia 30327.[7]  The PS Form 3877 in question was properly completed and initialed by a representative of respondent and contained a stamp showing receipt on May 5, 1999, of the items listed on that form by an office of the Postal Service in Atlanta, Georgia, as evidenced by the stamp of the Postal Service on the PS Form 3877 in question and the signature of a Postal Service representative.

A PS Form 3877 reflecting receipt by the Postal Service represents direct documentary evidence of the date and the fact of mailing.  See Coleman v. Commissioner, supra at 90.  A properly completed and executed PS Form 3877 also reflects compliance with respondent's established procedures for mailing deficiency notices.  See Keado v. United States, supra at 1212-1213; Coleman v. Commissioner, supra.  Where the existence of the notice of deficiency is not disputed, or, as is the case here, has been established, a properly completed PS Form 3877 by itself is sufficient, absent evidence to the contrary, to show that the notice of deficiency was properly mailed to a taxpayer, that is to say, raises a presumption of official regularity in favor of respondent.  See Keado v. United States, supra; United States v. Zolla, supra at 810; United States v. Ahrens, supra; Coleman v.

_____

[7]The PS Form 3877 in question also shows that on May 5, 1999, respondent mailed to Perimeter by certified mail a final notice of deficiency with respect to Perimeter's taxable year ended Jan. 31, 1997, and that on the same date a copy of that notice was mailed by certified mail to Mr. Kelly to whom Perimeter had granted a power of attorney.

Commissioner, supra at 91.

On the record before us, we have found the existence of a final notice of deficiency with respect to petitioners' taxable year 1997. The record also contains a PS Form 3877 relating to that final notice of deficiency, which was properly completed and initialed by one of respondent's 90-day notice clerks and signed by a representative of the Postal Service. We conclude on the instant record that the PS Form 3877 in the record raises a presumption of official regularity in favor of respondent. See Keado v. United States, supra; United States v. Zolla, supra; United States v. Ahrens, supra; Coleman v. Commissioner, supra. Pursuant to that presumption, the PS Form 3877 in question by itself is sufficient, absent evidence to the contrary, to establish that on May 5, 1999, respondent mailed to each petitioner by certified mail the final notice of deficiency with respect to petitioners' taxable year 1997 that was addressed to 4425 Northside Drive, Atlanta, Georgia 30327.

We conclude that petitioners have failed to introduce evidence that rebuts the presumption of official regularity raised by the PS Form 3877 in question. In this regard, petitioners offered no evidence that respondent failed to adhere to respondent's 90-day letter procedures.[8] See United States v.

---

[8]Nor have petitioners offered any evidence that the Postal Service failed to adhere to the Postal Service certified-mail procedures in attempting to deliver the certified mail in ques-
(continued...)

Ahrens, supra at 785-786; Coleman v. Commissioner, supra.
Instead, the focus of petitioners' evidence was that Mr. Spivey
considers mail that he receives to be very important and that
neither petitioner received the final notice of deficiency with
respect to petitioners' taxable year 1997.

Applying the presumption of official regularity in this
case, we find that on May 5, 1999, respondent mailed by certified
mail to each petitioner the final notice of deficiency with
respect to petitioners' taxable year 1997 that was addressed to
4425 Northside Drive, Atlanta, Georgia 30327.  The parties
stipulated that petitioners resided at that address for the six-
year period preceding the date of the hearing on the parties'
cross-motions.  We find that the address to which respondent
mailed the final notice of deficiency with respect to
petitioners' taxable year 1997 is petitioners' last known ad-
dress.  Although petitioners did not receive that notice, actual
receipt of a notice of deficiency by the taxpayer is not required
to begin the 90-day period within which a taxpayer may file a
petition in the Court.  See Keado v. United States, 853 F.2d at
1211-1212; DeWelles v. United States, 378 F.2d 37, 39 (9th Cir.
1967); Estate of McKaig v. Commissioner, 51 T.C. 331, 335 (1968).

We have considered all of the contentions and arguments of
petitioners that are not discussed herein, and we find them to be

---

[8](...continued)
tion to each petitioner.

without merit and/or irrelevant.

We conclude that we shall grant respondent's motion to dismiss for lack of jurisdiction and that we shall deny petitioners' motion to dismiss for lack of jurisdiction.

To reflect the foregoing,

<u>An appropriate order will be entered denying petitioners' motion to dismiss for lack of jurisdiction and granting respondent's motion to dismiss for lack of jurisdiction</u>.