MICHAEL EPSTEIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Epstein v. Commissioner
Docket No. 17564-87
United States Tax Court
T.C. Memo 1989-498; 1989 Tax Ct. Memo LEXIS 501; 58 T.C.M. (CCH) 128; T.C.M. (RIA) 89498; September 11, 1989
Zevie B. Schizer and Thomas S. Levine, for the petitioner. Theodore R. Leighton, for the respondent. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: This case is before the Court on respondent's motion to dismiss for lack of jurisdiction on the ground that the petition was not timely filed pursuant to section 6213. [1] Petitioner has not moved to dismiss, but he also takes the position that we lack jurisdiction, albeit for different reasons. In fact, the petition does not even allege that a notice of deficiency, which is a prerequisite to our jurisdiction, was mailed to petitioner. Likewise, in his reply petitioner denies respondent's allegations that a notice of deficiency was ever mailed to him. It is obvious and uncontested that *503 we lack jurisdiction. Nevertheless, we must proceed to sift through the evidence presented by the parties to determine the reasons for what is already obvious. See Pietanza v. Commissioner, 92 T.C. 729 (1989). We held a hearing on respondent's motion on June 22, 1988, and received stipulations, testimony, and exhibits. The findings of fact and opinion are combined for simplicity. Petitioner resided at 27 Prospect Park West, Brooklyn, New York when he filed his petition in this case. He has lived at this address continuously since 1973. The petition in this case was received by the Tax Court on June 12, 1987 and was contained in an envelope bearing a postmark date of June 10, 1987. Section 6213(a) provides that a petition must be filed with the Tax Court within 90 days from the date a statutory notice of deficiency is mailed to a taxpayer residing in the United States. If a petition is not filed within that 90-day period, this Court does not *504 acquire jurisdiction of the case. Keado v. United States, 853 F.2d 1209, 1212 (5th Cir. 1988); Cataldo v. Commissioner, 60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974); Rappaport v. Commissioner, 55 T.C. 709 (1971), affd. without opinion 456 F.2d 1335 (2d Cir. 1972); August v. Commissioner, 54 T.C. 1535, 1536 (1970). Respondent alleges that two separate notices of deficiency, both relating to petitioner's 1982 taxable year, were mailed via certified mail to petitioner's Brooklyn, New York address on January 17, 1986 and October 31, 1986. [2] Noting that the petition in this case was filed 421 days after the mailing date of the first statutory notice and 224 days after the mailing date of the second statutory notice, respondent has moved this Court to dismiss the petition as untimely. *505 In opposition to respondent's motion, petitioner claims that he did not receive either one of these notices because respondent failed to properly follow established mailing procedures. Petitioner argues, therefore, that this case should be dismissed for lack of jurisdiction on the ground that respondent failed to properly provide notice, as required prior to assessment by section 6213(a). See Pietanza v. Commissioner, supra at 736; Keeton v. Commissioner , 74 T.C. 377, 379 (1980); O'Brien v. Commissioner, 62 T.C. 543, 548 (1974). Dismissal on the ground urged by petitioner would presumably bar any further attempts by respondent to assess additional taxes for the year in issue, the statute of limitations having expired. See secs. 6501(a) and 6503. Respondent bears the burden of proving that each statutory notice of deficiency was properly mailed. Barrash v. Commissioner, T.C. Memo. 1987-592, affd. without published opinion 862 F.2d 872 (5th Cir. 1988). Petitioner contends that he was first apprised of the existence of a deficiency when he received a notice from the Internal Revenue Service, *506 dated March 16, 1987, titled Statement of Tax Due on Federal Tax Return (Form 3552), for his 1982 tax year. A copy of the Form 3552 was attached to the petition filed in this case and indicates a balance due as follows: ADD TAX
$ 343,254.00
DEL PEN
17,162.70
NEG PEN
17,162.70
INTEREST
191,127.58
$ 568,706.98
Respondent introduced evidence of two statutory notices of deficiency. The first statutory notice of deficiency is dated January 17, 1986. In that notice, respondent determined that petitioner and Ruth Epstein [3] were liable for the following deficiency and additions to tax for taxable year 1982: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6651(a)(1)
Sec. 6661
$ 25,274.00
$ 10,125.28
50 percent of  $ 1,263.70
$ 2,527.40
interest due   on $ 106,967.00
Respondent determined that petitioner failed to report dividend income of $ 47,828, underreported interest income by $ 1,244, and overstated his medical expense deduction by $ 1,472. Several computational adjustments were also included in the January 17, 1986 statutory notice.
*507 The second statutory notice of deficiency is dated October 31, 1986. In that notice, respondent determined that petitioner and Ruth Epstein were liable for the following deficiency and additions to tax for taxable year 1982: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6651(a)(1)
$ 343,254.00
$ 17,162.70
50 percent of  $ 17,162.70
interest due on
$ 343,254.00   This notice disallowed a claimed partnership loss of $ 686,048. The claimed partnership loss is petitioner's distributive share of a $ 1,636,946 loss reported by the "Mike Epstein & Co." partnership on its 1982 tax return. [4] The statutory notice of deficiency also made a number of minor computational adjustments, none of which were included in the January 17, 1986 statutory notice. As a preliminary matter, we note that the Form 3552 received by petitioner, and on *508 which he based his petition, requests payment based solely on an assessment of the deficiency set forth in the October 31, 1986 statutory notice. The October 31, 1986 notice takes into account the adjustments already made in the January 17, 1986 notice, but there is no evidence in the record indicating whether respondent has made an assessment of the deficiency set forth in the January 17, 1986 statutory notice. All we can be sure of is that the tax bill contained on the Form 3552 does not include any amount that might have been assessed pursuant to the first notice. Since the tax bill on the Form 3552 was the basis for the petition and is the only deficiency amount in issue, will will confine our opinion to the validity of the October 31, 1986 notice. We find that respondent has submitted persuasive evidence that the statutory notice of deficiency was properly mailed to petitioner on October 31, 1986. We also find that the petition was filed more than 90 days after the date the second notice of deficiency was mailed to petitioner. We will therefore grant respondent's motion to dismiss this case for lack of jurisdiction. Gail Bugden was employed as a statutory notice control clerk *509 at the Internal Revenue Service Brookhaven Service Center during October 1986. Ms. Bugden testified concerning the procedure that she followed while preparing manually processed statutory notices of deficiency for mailing. Although she could not recall preparing the statutory notice dated October 31, 1986, Ms. Bugden recognized her handwriting on the face of the notice. After receiving a statutory notice of deficiency and accompanying case file from a tax examiner, Ms. Bugden would date stamp the first and second pages of the notice, stamp the word "certified" on the first page of the notice, write a certified mail number on the first page of the notice, and stamp the name of the Service Center Director on the first page of the notice. On a typical day, Ms. Bugden would prepare between five and ten statutory notices for mailing. To accompany each separate mailing of statutory notices, Ms. Bugden would prepare a Postal Service Form 3877, Application for Registration or Certification (Form 3877). On the Form 3877, Ms. Bugden would list each taxpayer's name and address, the certified mail number assigned to each statutory notice, the Internal Revenue Service return address, and *510 the total number of statutory notices prepared for mailing and listed on the form. The line entries were listed on the Form 3877 in sequential certified mail number order and all of the statutory notices of deficiency listed on a particular Form 3877 should have borne the same date. Ms. Bugden recognized her handwriting on the Form 3877 that she prepared to accompany the October 31, 1986 statutory notice of deficiency. The certified mail number assigned to and written on each statutory notice of deficiency was also handwritten on a blank line on the window envelope in which the notice was to be mailed. After preparing each statutory notice, envelope, and accompanying Form 3877, Ms. Bugden would attach the notice and corresponding envelope to the case file pertaining to the particular taxpayer and hand carry the file to an Internal Revenue Service tax examiner for review. The Form 3877 remained on Ms. Bugden's desk and was not checked by the tax examiner. If satisfied that the statutory notice of deficiency had been properly prepared by the statutory notice control clerk, the tax examiner then placed his or her initials on the lower right hand corner of the first page of the statutory *511 notice of deficiency. The initials "C. M." are located in the lower right hand corner of the first page of the October 31, 1986 statutory notice of deficiency. After receiving the case file containing the initialed statutory notice of deficiency from the tax examiner, Ms. Bugden would place two copies of the statutory notice into the envelope. To ensure that the proper notice was placed in the proper envelope, Ms. Bugden compared the certified mail number written on the notice with the number written on the envelope. If the numbers matched, Ms. Bugden would seal the envelope. Ms. Bugden usually prepared only one Form 3877 each day. Each completed Form 3877 was photocopied and the copies were stored in sequential certified mail number order in a binder. The original Form 3877 was wrapped around the statutory notice letters listed on that particular Form 3877 and secured by a rubber band. To ensure that the correct Form 3877 was wrapped around the statutory notices listed on that Form 3877, Ms. Bugden checked the names, addresses, and the certified mail numbers written on the window envelopes against the line entries listed on the Form 3877. The bundled letters were hand carried *512 to the Brookhaven Service Center mail room by Ms. Bugden. If the mail clerk was present, Ms. Bugden would physically hand the bundle of letters to her. If the mail clerk was not in the room, the letters would be left in a bin near the mail clerk's desk. The mail clerk would then assume responsibility for the statutory notices of deficiency. During the year in issue, Ileana Wolf was employed as the Brookhaven Service Center Mail Coordinator. In this capacity, Ms. Wolf acted as a liaison between the United States Postal Service and the Internal Revenue Service. Ms. Wolf testified that after a statutory notice control clerk delivered a bundle of notices wrapped in a Form 3877 to the mail room, that bundle would be placed in a mail container and transported by an Internal Revenue Service employee to the Holtsville Post Office. The Holtsville Post Office is located approximately one and a half to two miles from the Brookhaven Service Center. The Internal Revenue Service employee would physically carry the mail container into the back of the post office, place it on the floor, and leave the post office. The Internal Revenue Service employee making the delivery would not wait to *513 receive a receipt for the letters. No records are maintained by the Internal Revenue Service indicating which employee delivered the bundles of statutory notices of deficiency to the post office on any particular day. Vincent J. Hatton was employed as a clerk at the Holtsville Post Office during the year in issue. As a Postal Service employee, one of his duties included processing statutory notice letters sent via certified mail that had been delivered to the post office by Internal Revenue Service employees. To process the notices, Mr. Hatton would remove the Form 3877 from its bundle of statutory notice letters, count the number of letters in the bundle, and compare that number to the number of pieces listed on the Form 3877. If the numbers matched, Mr. Hatton stamped the Holtsville Post Office postmark on the Form 3877 and placed his initials on the form. Mr. Hatton would also acknowledge that he compared the number of letters in the bundle with the number listed on the Form 3877 by either writing the number on the form or by circling the number previously placed on the form by the statutory notice control clerk. Mr. Hatton testified that he was taught this procedure by another *514 employee at the post office and, that as far as he knew, all the postal clerks employed at the Holtsville Post Office used the same procedure. Mr. Hatton also testified that if a discrepancy existed between the number of letters listed on a Form 3877 and the number of letters in the bundle, he would examine the letters in the bundle to determine which letter or letters were missing. He would then draw a line through that specific entry on the Form 3877 to indicate that the letter was not verified and would cross out the incorrect number of pieces listed by the sender and write the correct number on the form. Only after noting the problem on the Form 3877 would Mr. Hatton postmark and initial the form. After the letters were verified, they were placed on a mail truck and entered the mail stream. The postmarked Form 3877 was stored in a mail bucket at the post office with other mail for the Service Center. This mail was picked up at the post office by an Internal Revenue Service employee each morning. Approximately two weeks after Gail Bugden delivered a bundle of statutory notices to the Service Center mail room, the then postmarked and initialed Form 3877 was returned to her *515 through the Service Center's internal mail system. Upon receipt of a postmarked and initialed Form 3877, Ms. Bugden would locate the corresponding photocopy of that same form in the certified mail binder and replace it with the original postmarked form. The photocopy would be placed in the trash and incinerated. Ms. Bugden testified that if a Form 3877 was returned to her without a postmark, with a name crossed off, or with an extraneous marking on it she would have immediately questioned the postal clerk. She could not recall receiving a Form 3877 from the post office that either lacked a postmark or contained any unexplained alterations during the year in issue. In addition to Ms. Bugden's scrutiny of the returned Forms 3877, Ms. Wolf spoke to the Holtsville postmaster on a daily basis during the year in issue. Ms. Wolf could not recall a single instance during 1986 when a Postal Service employee contacted her regarding a problem with a Form 3877. Statutory notices of deficiency that were returned to the Brookhaven Service Center as undeliverable by the post office were sent to Ms. Bugden. These letters were date stamped, stamped "received," and attached to the taxpayer's *516 file. Ms. Bugden did not recall receiving any of the letters listed on the October 31, 1986 Form 3877 as undeliverable and there is no record in respondent's case file pertaining to petitioner indicating that the October 31, 1986 statutory notice was returned to the Internal Revenue Service as undeliverable. During the year in issue, the Brookhaven Service Center prepared both manually processed statutory notices and computer generated statutory notices. To facilitate the mailing of computer generated notices, a Postal Service employee was stationed in the Machine Services area of the Brookhaven Service Center. This Postal Service employee was responsible for postmarking only those statutory notices of deficiency that were computer generated. The Postal Service stamp is kept under lock and key and the Postal Service employee was the only individual who had access to the stamp. The October 31, 1986 statutory notice of deficiency was manually prepared. The Form 3877 prepared by Ms. Bugden to accompany the October 31, 1986 statutory notice lists the names and addresses of four taxpayers, sequential certified mail numbers for each of the entries, and the number 4, indicating that *517 four statutory notices were listed on the form for mailing. Petitioner's name and address is the final entry on the form. Each statutory notice of deficiency listed on the October 31, 1986 Form 3877 is dated October 31, 1986. A large X has been drawn through the unused lines on the Form 3877. Ms. Bugden testified that she placed this marking on the form to indicate that no additional entries were to be added. The Form 3877 with petitioner's name and address on it is stamped with a Holtsville postmark dated October 31, 1986. Mr. Hatton testified that he placed that postmark on the form and acknowledged that his initials are on the bottom of the form. The number 4 on the form is circled, but Mr. Hatton could not remember if he circled that number. As noted earlier, the Form 3877 involved herein listed four names and addresses. With the exception of the October 31, 1986 statutory notice involved here, the remaining three statutory notices of deficiency listed on the Form 3877 were all delivered to the taxpayers identified on the form. All three of those taxpayers subsequently filed timely petitions with this Court. The Form 3877 in issue does contain some unexplained markings. *518 The postmark and postal clerk's initials appear to be lined out. In addition, the notation "Not rec.?" is handwritten on the form. Ms. Bugden and Mr. Hatton both testified that they did not place those marks on the Form 3877 and neither witness could identify the handwriting on the form. Ms. Bugden testified that sheI never wrote on postmarked Forms 3877 and is not aware of other Internal Revenue Service employees who wrote on the forms. Petitioner contends that the procedural steps followed by the Brookhaven Service Center employees who prepared statutory notices of deficiency for certified mailing were inadequate because they did not comport with the mailing procedure established by statute, case law, and the Internal Revenue Manual. Relying primarily on Cataldo v. Commissioner, 60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974), August v. Commissioner, 54 T.C. 1535 (1970), and the Internal Revenue Manual, petitioner argues that the October 31, 1986 statutory notice must be invalidated because it was improperly mailed. We review each argument raised by petitioner. Petitioner first argues that the Internal Revenue *519 Manual, Audit, sec. 4462.2 (1981) provides specific instructions concerning the procedures for preparing and mailing statutory notices of deficiency. In pertinent part, that section provides as follows: (6) The Service employee will then enter the certified number on the envelope, and list the same number together with the name and address of the addressee on P.S. Form 3877. The year(s) for which the notice is applicable, or the date of death in estate tax cases, will be entered in the remarks column opposite the taxpayer's name and address. The notices to be mailed together with P.S. Form(s) will then be presented to the post office. The postal employee first compares the certified mail numbers, and names and addresses, on the envelope with those on P.S. Form 3877 and counts the number of envelopes. He/she then indicates post office receipt of this mail by signing and inserting the post mark on P.S. Form 3877, and returns the forms to the Service employee. The Service employee should initial and date P.S. Form 3877 as part of the permanent record of mailing, in order that, if called as a witness, he/she could testify as to the exact date on which the letters were presented for *520 mailing. * * * According to petitioner, the October 31, 1986 statutory notice of deficiency is invalid because the Internal Revenue Service employees at the Brookhaven Service Center failed to explicitly follow the above-quoted procedure. We begin by noting that the procedures set forth in the Internal Revenue Manual are not law. Keado v. United States, 853 F.2d 1209, 1214 (5th Cir. 1988). Section 6212, the applicable statutory provision, authorizes respondent to send a statutory notice of deficiency to the taxpayer's last known address by certified or registered mail. Our inquiry, therefore, focuses on whether respondent has established that he mailed a statutory notice of deficiency to petitioner in accordance with section 6212 and the case law construing that section. In August v. Commissioner, supra at 1537, and Cataldo v. Commissioner, 60 T.C. at 524, we held that respondent is required to establish by competent and persuasive evidence that a statutory notice of deficiency was mailed to a taxpayer on a date certain. Although respondent introduced detailed evidence in both of these cases establishing that he had *521 substantially complied with the mailing procedure set forth in section 4462.2 of the Internal Revenue Manual, [5] we have never held that such a showing by respondent is necessary to establish proper mailing. Indeed, we find no language in either opinion setting forth a minimum standard of proof that must be met before we can find that a statutory notice of deficiency was properly mailed. Rather, the decisions in August and Cataldo represent determinations by this Court that the evidence offered by respondent in both cases was sufficient to establish actual mailing. We are not rewriting the procedure for mailing statutory notices of deficiency. Nor are we encouraging respondent to ignore the detailed mailing procedure contained in his own Manual. That *522 section was obviously formulated to provide guidance to Internal Revenue Service employees preparing statutory notices of deficiency for mailing and, when complied with, provides adequate proof of mailing. Keado v. United States, supra at 1213; United States v. Ahrens, 530 F.2d 781, 784-786 (8th Cir. 1976). We are merely ruling on the evidence presented. That evidence establishes that respondent properly mailed a statutory notice of deficiency to petitioner on October 31, 1986. There is no question that the procedure followed in this case does not completely conform with the mailing procedure set forth in the Internal Revenue Manual. As discussed previously, however, compliance with each aspect of the mailing "procedure is irrelevant if the evidence adduced is sufficient to prove mailing." Keado v. United States, supra at 1214. Petitioner points out that Ms. Bugden did not initial or date the Form 3877 she prepared to accompany the mailing. The Internal Revenue Manual states that the Internal Revenue Service employee who prepares the Form 3877 should initial and date the form so that he or she can testify as to the exact *523 date on which the letters were presented for mailing if called as a witness. In this case, Ms. Bugden recognized her handwriting on the Form 3877 and was able to testify in detail concerning the standard procedure that she followed when preparing statutory notices of deficiency for mailing. Ms. Bugden also testified that the evidence presented indicated that she prepared the Form 3877 on October 31, 1986. Under these circumstances, we do not consider the statutory notice control clerk's failure to initial and date the Form 3877 to be of critical importance. Petitioner also argues that the Form 3877 should be disregarded as proof of mailing because Mr. Hatton, the Postal Service employee who verified the statutory notices, did not place his initials on the form. There is simply no support for this argument in the record. Although the initials have been lined out in ink, Mr. Hatton testified under oath that his initials appear on the bottom of the October 31, 1986 Form 3877 and we have no reason to doubt his veracity. In addition to his argument concerning respondent's failure to precisely comply with the mailing procedure set forth in the Internal Revenue Manual, petitioner *524 also argues that the statutory notice of deficiency dated October 31, 1986 is invalid because the Postal Service similarly failed to follow its own regulations concerning the verification of certified mail. [6] Specifically, petitioner argues that Mr. Hatton's failure to compare the names, addresses, and certified mail numbers listed on the statutory notices of deficiency with the corresponding line entries on the Form 3877 is fatal to a showing that the notices were actually mailed. Petitioner believes that without this second check by the Postal Service, respondent has a "built-in incentive to make mistakes" while preparing and mailing statutory notices of deficiency. We do not find this argument persuasive. *525 The method Mr. Hatton employed to verify the statutory notice letters obviously did not comply with the procedures set forth in either the Internal Revenue Manual or the Domestic Mail Manual. This finding, however, is irrelevant to the outcome of this case. Even if Postal Service regulations are not complied with, an otherwise valid notice of deficiency is not rendered ineffective. This Court only requires respondent to introduce evidence showing that the notice of deficiency was properly delivered to the Postal Service for mailing. We do not require respondent to establish that the Postal Service personnel performed their official duties. Monge v. Commissioner, 93 T.C. 22 (1989); Cataldo v. Commissioner, 60 T.C. at 524; Eisenberg v. Commissioner, T.C. Memo, 1983-767, affd. without published opinion 753 F.2d 1078 (7th Cir. 1985). [7] Ms. Bugden and Ms. Wolf both testified that the statutory notices of deficiency were properly prepared and verified before being placed in the hands of the Postal Service. Inasmuch as respondent bears the burden of establishing that each statutory notice of deficiency was properly prepared, *526 addressed, and mailed, petitioner's claim that respondent has a "built-in incentive to make mistakes" is without merit. Petitioner also argues that respondent's practice of depositing the bundled statutory notices of deficiency in the back area of the Holtsville Post Office violated case law. According to petitioner, case law seems to assume that Internal Revenue Service employees remain with the statutory notices of deficiency and accompanying Form 3877 until the statutory notices of deficiency are verified and the Form 3877 is postmarked by a Postal Service employee. Petitioner contends that an Internal Revenue Service employee should have remained with the notices until they were processed to prevent any tampering. The cases cited by petitioner do not specify an exact procedure that must be followed when statutory notices of deficiency are delivered to a post office for mailing by an employee of the Internal Revenue Service. Similarly, the Internal Revenue Manual states only that the Postal Service employee is required to return the postmarked Form 3877 to the Internal Revenue Service employee. There is *527 simply no legal requirement, statutory or otherwise, requiring the Internal Revenue Service employee who delivers the statutory notices of deficiency to the post office to wait at the post office until the verification procedure is completed. Petitioner's argument concerning the possibility of someone tampering with the statutory notices of deficiency while they are at the post office is also unpersuasive. Petitioner contends that an Internal Revenue Service employee should have remained with the statutory notices of deficiency until they were processed by the postal clerk to avoid the possibility of tampering. We conclude that after the statutory notices of deficiency were delivered to the post office, respondent's employees were not required to remain with them until they were verified by a Postal Service employee. The procedures for delivery of statutory notices to the Post Office, which were worked out between respondent's employees and the Holtsville Post Office appear to be reasonable. The evidence in this case also establishes that the bundle containing petitioner's statutory notice and Form 3877 was received and processed by postal employee Hatton. Petitioner also argues *528 that the postmark was illegible and that the additional markings on the Form 3877 render the form a nullity. We do not agree. The postmark is legible. Mr. Hatton had no problem reading the postmark. While we acknowledge that the impression is far from clear, we have no doubt that the date on the postmark is October 31, 1986. We also disagree with petitioner's conclusion concerning the additional markings on the Form 3877. Neither party has been able to explain why the postmark and postal clerk's initials are crossed out on the Form 3877. We also do not know what the notation "Not rec.?" means. Although these marks could only have been placed on the Form 3877 by either Postal Service employees or Internal Revenue Service employees, we are not convinced that the markings indicate a deficiency in respondent's mailing of the statutory notice. Petitioner also argues that a showing of whether the statutory notice of deficiency was returned to respondent by the Postal Service is an important part of respondent's proof. We disagree. A statutory notice of deficiency that is properly mailed need not be received by the taxpayer to be effective. Keado v. United States, 853 F.2d at 1211-1212; *529 Tadros v. Commissioner, 763 F.2d 89, 91 (2d Cir. 1985); Wallin v. Commissioner, 744 F.2d 674, 676 (9th Cir. 1984), revg. and remanding a Memorandum Opinion of this Court; United States v. Zolla, 724 F.2d 808, 810 (9th Cir. 1984); United States v. Ahrens, 530 F.2d at 785; Monge v. Commissioner, supra at 33; Pietanza v. Commissioner, 92 T.C. 729, 736 (1989); Estate of McKaig v. Commissioner, 51 T.C. 331, 335 (1968). Therefore, the showing of whether a notice of deficiency has been returned by the Postal Service to the Internal Revenue Service as undeliverable is not an essential part of the proof required to establish that a notice has been properly mailed. Wallin v. Commissioner, supra at 676; Monge v. Commissioner, supra at 33-34; Cataldo v. Commissioner, 60 T.C. at 524; Eisenberg v. Commissioner, supra.[8] In any event, the evidence indicates that none of the statutory notices of deficiency listed on the October 31, 1986 Form 3877 were ever returned to the Brookhaven Service Center *530 by the Postal Service. Petitioner also places great emphasis on the fact that respondent did not offer into evidence a return receipt for either statutory notice of deficiency. Petitioner cites McPartlin v. Commissioner, 653 F.2d 1185 (7th Cir. 1981), revg. and remanding an Order of this Court, for the proposition that if respondent cannot produce a certified mail receipt, the accompanying notice of deficiency must be considered invalid. Petitioner's reliance on this case is misplaced. Section 6212(a) refers only to registered mail and certified mail. There is nothing in the legislative history of this provision that indicates Congress intended deficiency notices mailed as certified mail be sent return receipt requested. Eisenberg v. Commissioner, supra.In McPartlin v. Commissioner, supra, the Seventh Circuit held that respondent failed to mail a statutory notice of deficiency to the taxpayer's last known address. The Court did not base its decision on the absence of a return receipt, but merely noted that the absence of a return receipt should have *531 apprised the Commissioner that the notice of deficiency was not delivered. McPartlin v. Commissioner, Supra at 1191; see also Eisenberg v. Commissioner, supra.
Petitioner also argues that the notation "Not rec.?" on the Form 3877 indicates that the statutory notice of deficiency was never received by him. We disagree. As discussed previously, neither party has been able to establish what the notation means. In any event, the statutory notice of deficiency need not be received to be valid. Respondent is only required to establish that the notice was properly mailed. In August v. Commissioner, 54 T.C. 1535 (1970), an envelope bearing the notation "7-4" was introduced by petitioner in an attempt to prove that the statutory notice of deficiency was mailed on July 4, 1969, rather than on June 18, 1969. The Court, lacking any evidence concerning what the notation meant, refused to assume that it stood for July 4, 1969. August v. Commissioner, supra at 1538. Likewise, we refuse to engage in conjecture. In support of his motion to dismiss for lack of jurisdiction, respondent attached the affidavit of *532 James Swierczewski, the Tax Shelter Program Manager at the Brookhaven Service Center during 1986. The affidavit sets forth the procedure used by employees at the Brookhaven Service Center who prepared statutory notices of deficiency during 1986. Mr. Swierczewski did not testify at trial, but his affidavit was admitted into evidence without objection. Petitioner contends that respondent did not call Mr. Swierczewski as a witness because the information contained in the affidavit is damaging to respondent's case. In particular, petitioner contends that the information contained in the affidavit establishes that the Brookhaven Service Center was not sending out statutory notices of deficiency during the year in issue in accordance with section 6212(a). Petitioner requests, therefore, that we find as a fact that the statutory notice dated October 31, 1986 was actually mailed to petitioner by Internal Revenue Service employees with no participation by Postal Service employees. Petitioner bases this argument on a single paragraph contained in Mr. Swierczewski's affidavit. That paragraph reads as follows: t) The [statutory notice] clerk then delivers, by hand, the group of letters *533 wrapped in the Form 3877 to the Brookhaven Service Center Mail Room. An employee of the United States Postal Service is permanently stationed in the Brookhaven Service Center Mail Room. According to petitioner, this statement infers that statutory notices of deficiency were mailed by Internal Revenue Service employees from the Brookhaven Service Center Mail Room and not by employees of the United States Postal Service. We disagree with this inference. The witnesses present at trial discussed Postal Service mailing techniques in great detail. We refuse to read the statement in the affidavit to mean that the affiant believed that notices of deficiency were mailed by Internal Revenue Service employees from the service center mail room. We read the affidavit to indicate that the affiant was not aware of what happened to a statutory notice of deficiency once it reached the mail room. As a final argument, petitioner contends that because his petition was filed within 90 days of his first receiving actual notice of the deficiency (the Form 3552), the petition should be considered timely filed. In support of this contention petitioner relies on Estate of McKaig v. Commissioner, 51 T.C. 331 (1968). *534 The facts in Estate of McKaig v. Commissioner, supra, are clearly distinguishable in that they indicated that the taxpayer's failure to receive the notice of deficiency was due to either respondent's use of an incorrect last known address or the failure of the Post Office to properly make delivery. Here, respondent used the correct last known address and there is no convincing evidence that the notice was not delivered. We conclude that the petition filed herein was untimely and that respondent's motion to dismiss for lack of jurisdiction should be granted. An appropriate order will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent has the authority to issue a second notice of deficiency for the same taxable year if the taxpayer has failed to file a petition from the first notice. Sec. 6212(c)(1); Smoot v. Commissioner, 25 B.T.A. 1038, 1041 (1932); Goff v. Commissioner, 18 B.T.A. 283, 288 (1929); See Gmelin v. Commissioner, T.C. Memo. 1988-338↩.
3. Ruth Epstein is a non-petitioning spouse.↩
4. Petitioner's Schedule K-1 for 1982 reports a partnership loss of $ 637,923 from the Mike Epstein & Co. partnership. Neither party has explained the discrepancy between the amount reported on the Schedule K-1 and the amount reported on petitioner's individual tax return for 1982.↩
5. Neither opinion makes any reference to the Internal Revenue Manual. The mailing procedure described in each opinion, however, substantially comports with the mailing procedure set forth in the Internal Revenue Manual. Cataldo v. Commissioner, 60 T.C. 522, 524 (1973), affd. per curiam 449 F.2d 550 (2d Cir. 1974); August v. Commissioner, 54 T.C. 1535, 1537-1538↩ (1970).
6. Domestic Mail Manual sec. 912.7 (1985) provides: .72 Quantity Mailings. If the certified mail numbers are listed on firm mailing bills in consecutive order and the mail is similarly arranged, verify quantity mailings as follows: a. Count the pieces of mail and listings on the bill. They must agree. b. Compare certified mail numbers on first and last articles with the first and last numbers listed on the bill. They must agree. c. Make a spot-check to determine that mailings are properly prepared and that postal charges have been fully prepaid. d. Postmark receipt and give it to mailer. Enter time articles were mailed, if requested to do so by the sender, placing your initials by the entry. Use ink to enter time and initials in the space for the name of accepting employee. e↩. Depost articles in mail. Do not return to mailer.
7. Bedson v. Commissioner, T.C. Memo. 1981-64↩.
8. Bedson v. Commissioner, T.C. Memo. 1981-64↩.